# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

BETHZAIDA DELEON,

               Plaintiff,

v.

DOLLAR TREE STORES, INC.,

               Defendant.

3:16-cv-00767 (CSH)

**JANUARY 30, 2017**

## RULING ON DEFENDANTS' MOTION TO DISMISS THE COMPLAINT OR STAY PROCEEDINGS AND COMPEL ARBITRATION

### HAIGHT, Senior District Judge:

Plaintiff Bethzaida Deleon brings this action against Defendant Dollar Tree Stores, Inc., her former employer, alleging state-law gender discrimination, sexual harassment/hostile work environment, and retaliation claims pursuant to the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60(a)(1) *et seq*. *See* Doc. 1, Ex. A. Plaintiff initially filed the action in state court, but Defendant removed it to this Court on May 19, 2016 on the grounds of diversity jurisdiction. Doc. 1. Defendant then filed a motion to compel arbitration and dismiss Plaintiff's Complaint pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*, or in the alternative, to stay the proceedings and compel arbitration. Docs. 15-16. This Ruling resolves that motion.

## I.    Factual Background

Plaintiff was initially hired by Defendant at its Waterford, CT store on or about August 10, 2014. Doc. 1, Ex. A at 1 ¶ 4. In August 2015, Plaintiff alleges that an incident occurred between her, Tiffany Griffin, and Rafael Rosado, both managers of the store. *Id.* at 1-2 ¶¶ 5-9. The next day,

a coworker informed Plaintiff about a derogatory sexual comment made by Tiffany Griffin about Plaintiff and Rafael Rosado.  *Id.* at 1-2 ¶ 7.  Plaintiff contacted a Human Resources employee, who eventually came to the store to meet with Plaintiff but did not focus on resolving or otherwise addressing the incident.  *Id.* at 2-3 ¶¶ 9-15.  Plaintiff called out of work the next scheduled day after this meeting and was told by an assistant manager that Defendant would contact her.  *Id.* at 3 ¶¶ 16-18.  Plaintiff was thereafter not given any shifts by Defendant while Defendant continued to employ Tiffany Griffin.  *Id.* at 3 ¶¶ 19-20.

Defendant implemented an arbitration program in 2014.  Doc. 16-1, Declaration of Steven Pearson ("Pearson Decl.") ¶¶ 4-5.  Associates hired on or after October 6, 2014 were required to participate in the arbitration program as a condition of employment.  *Id.* ¶ 6.  All associates, like Plaintiff, hired prior to October 6, 2014, were required to submit an opt-out form either electronically or by mail to avoid being including in the arbitration program.  *Id.* ¶ 7.  The deadline to opt-out was May 31, 2015.  *Id.*  In April 2015, Defendant sent each store manager detailed instructions and information regarding the arbitration program and the steps to be taken with regard to associates that had a right to opt-out (*i.e.* associates hired prior to October 6, 2014).  *Id.* ¶ 8.  Pursuant to these instructions, every associate was required to access the arbitration program's website, which had all of the information regarding the arbitration program including the Mutual Agreement to Arbitrate Claims ("Arbitration Agreement").  *Id.* ¶¶ 9-10; Pearson Decl. Ex. A-2.  A flyer was required to be placed in each store that also contained express information regarding how to opt-out and the deadline for opting-out, May 31, 2015.  Pearson Decl. ¶ 10; Pearson Decl. Ex. A-3.

Associates also had to acknowledge receipt of the Arbitration Agreement by accessing the

website and clicking a box by April 24, 2015.  Pearson Decl. ¶ 12; Pearson Decl. Ex. A-2.

Defendant's records reveal that Plaintiff electronically accessed the information regarding the

arbitration program twice on April 16, 2015.[1]  Pearson Decl. ¶ 13; Pearson Decl. Ex. B.  Plaintiff

did not opt-out of the Arbitration Agreement.

The Arbitration Agreement expressly provides that: "The Parties agree to the resolution by

arbitration of all claims or controversies . . . arising out of or related to Associate's employment (or

its termination) . . . that Dollar Tree may have against Associate or that the Associate may have

against . . . (1) Dollar Tree."  Pearson Decl. Ex. C at 1.  This expressly included "claims for . . .

retaliation or discrimination (including . . . sex)."  *Id.*  The last page of the Arbitration Agreement

contains clauses detailing that the associate acknowledges that he or she has carefully read the

agreement, been given the opportunity to discuss it with legal counsel, and understands that he or

she is giving up the right to a jury trial.  *Id.* at 4.  It also states that the "[c]onsideration" for the

agreement is "[t]he promises by Dollar Tree and by Associate to arbitrate disputes, rather than

litigate them before courts or other bodies," which "provide[s] consideration for each other."  *Id.*

Finally, the Arbitration Agreement provides that the Federal Arbitration Act ("FAA") will govern

the interpretation and enforcement of the agreement.  *Id.* at 1.

---

[1] Plaintiff, however, accessed the Arbitration Agreement pertaining to associates signing at the time of hire, which is why the records reveal that Plaintiff's employment status was hired on or after October 6, 2014.  Doc. 16 at 2 n.1.  It is also why the agreement she electronically accessed, the one applying to those at the time of hire, was submitted to this Court as Pearson Decl. Ex. C as opposed to the agreement that was actually meant to be applied to Plaintiff, the one that detailed the opt-out procedures in the agreement itself, *see, e.g., Taylor v. Dollar Tree*, No. 16-2, 2016 WL 6523442, at *2 (N.D. Ind. Nov. 3, 2016) (detailing paragraphs in that agreement explicitly setting out the opt-out procedures that were not in the agreement viewed by Plaintiff).

## II.    Standard of Review

"The FAA creates a 'body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 127 (2d Cir. 2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). It "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution" and "calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration." *Id.* (quoting *Preston v. Ferrer*, 552 U.S. 346, 349 (2008)) (internal quotation marks omitted). The FAA generally applies to employment agreements. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). There is a liberal policy favoring arbitration agreements, but parties cannot submit to arbitration disputes they did not so agree to submit. *Am. Express*, 672 F.3d at 127. However, any doubts concerning the scope of an agreement to arbitrate "should be resolved in favor of arbitration" and courts are required "to construe arbitration clauses as broadly as possible." *Id.* at 128 (internal quotation marks and citations omitted).

In the context of a motion to compel arbitration brought pursuant to the FAA, this Court "applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id.* (citing 9 U.S.C. § 4). The Second Circuit follows a two-part test to determine whether claims are subject to arbitration. *Am. Express*, 672 F.3d at 128. First, a court considers "whether the parties have entered into a valid agreement to arbitrate." *Id.* (citations omitted). Second, if the parties have entered into such an agreement, the court considers "whether the dispute at issue comes within the scope of the arbitration agreement." *Id.*

(citations omitted).

Although the FAA creates a body of federal substantive law regarding arbitration, "in evaluating whether the parties have entered in a valid arbitration agreement, the court must look to state law principles." *Cap Gemini Ernst & Young, U.S., LLC v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003); *see also Hottle v. BDO Seidman LLP*, 268 Conn. 694, 704-05 (2004) (quoting and citing, *inter alia*, *Cap Gemini*, 346 F.3d at 364).  Under Connecticut law,[2] in order for a contract to be valid there must be a meeting of the minds. *Helenese v. Oracle Corp.*, No. 09-351, 2010 WL 670172, at *3 (D. Conn. Feb. 19, 2010) (citing *Gibbs v. Conn. Gen. Life Ins.*, 97-0567009, 1998 WL 123010, at *2 (Conn. Super. Ct. March 3, 1998)).  "For a promise to be enforceable against the promisor, the promisee must have given consideration for the promise, defined as 'a benefit to the party promising, or a loss or detriment to the party to whom the promise is made.'" *Id.* (quoting *Gibbs*, 1998 WL 123010, at *2).

Even without a written contract, such "a legally binding agreement may be inferred from the parties' conduct when that conduct shows a tacit understanding," given the circumstances. *D'Antuono v. Serv. Road Corp.*, 789 F. Supp. 2d 308, 324 (D. Conn. 2011) (citing *Sandella v. Dick Corp.*, 53 Conn. App. 213, 219 (1999)).  Moreover, "[t]he FAA generally requires federal courts to enforce even implied agreements to arbitrate, so long as they are set forth in some writing." *Id.* (citing 9 U.S.C. § 2 and *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir. 1987)). Thus, if an employee is presented with a written arbitration agreement, it may be irrelevant that the employee never actually signed it if the employee's consent can be reasonably inferred from the employee's conduct. *See id.*

---

[2] The parties appear to agree that Connecticut law applies to the Arbitration Agreement.

### III.   Discussion

The Court now addresses each of the two-parts of the inquiry required by this Circuit to determine if this action must be dismissed or arbitration compelled: (1) whether this Arbitration Agreement is valid, and (2) whether the disputes at issue are the subject of the Arbitration Agreement. *See Am. Express*, 672 F.3d at 128.  The Court then addresses Plaintiff's additional arguments and whether to stay or dismiss this action.

### A.      Validity of the Arbitration Agreement

It is undisputed that Plaintiff accessed the Arbitration Agreement on two occasions on April 16, 2015, Pearson Decl. ¶ 13 and Ex. B, and Plaintiff did not terminate her employment or opt-out of Defendant's arbitration program despite materials provided to Plaintiff and to Plaintiff's store explaining the right to opt-out of the program, Pearson Decl. ¶¶ 8-11 and Ex. A.  The materials made clear that associates would be bound by the Arbitration Agreement if they did not opt-out.  *Id.* Plaintiff does not take issue with these facts, instead, Plaintiff argues that there was no consideration supporting the Arbitration Agreement.  Doc. 18 at 3-6.[3]

Plaintiff asserts that under Connecticut law, continued employment is not sufficient consideration for the employee's promise to arbitration claims.  Doc. 18 at 4-5.  Defendant responds by stating that the mutual promise to arbitrate all disputes is the consideration.  Doc. 19 at 1-3. According to Defendant, such mutual promises are sufficient to support an arbitration agreement. *Id.*  Plaintiff contends that this is "circular logic," but does not cite any case finding that such mutual agreement cannot support consideration.  Doc. 18 at 5.

---

[3] Plaintiff also does not make any argument addressing the fact that Plaintiff viewed, and according to Defendant, is bound by an agreement that appears to pertain to employees hired after October 6, 2014 by its title.

Defendant is correct that mutual promises have been held sufficient to support consideration. *See Topf v. Warnaco, Inc.*, 942 F. Supp. 762, 767 n.2 (D. Conn. 1996) (explaining that "[m]utual promises to arbitrate are sufficient to support an arbitration agreement" (citing *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 411 (2d Cir. 1959)); *see also Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 452 (2d Cir. 1995) ( "[W]e [have] suggested that mutual promises to arbitrate could constitute sufficient consideration to support an arbitration agreement, [though] we did not exclude the possibility that other consideration could support the agreement."); *Manzin v. United Bank & Trust Co.*, 6 Conn. App. 513, 516 (1986) (("[M]utual promises qualify as sufficient consideration for a binding contract." (citing, *inter alia*, *Gordon v. Indusco Mgmt. Corp.*, 164 Conn. 262, 267-68 (1973))). Although a number of the cases cited by Defendant apply to when a contract is modified, *see, e.g.*, *Manzin*, 6 Conn. App. at 516, other courts have recognized the principle is equally applicable to agreements to arbitrate in the first instance. *See, e.g., Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 104-05 (E.D.N.Y. 2015) (applying New York law) (collecting cases). The Court sees no reason to reach a different conclusion here. Thus, the promise by Defendant to litigate any disputes it has against Plaintiff in arbitration is sufficient consideration for Plaintiff's promise to litigate any disputes she has against Defendant in arbitration.[4]

In any event, even if this mutual promise is not considered adequate consideration Plaintiff's continued employment does provide such consideration. A number of courts in this District have held that "[w]here an individual's employment is at-will, continued employment is sufficient consideration to render an arbitration agreement binding." *Comfort v. Mariner Health Care, Inc.*,

---

[4] Plaintiff cites no caselaw supporting her argument that such consideration is "circular" and fails to elaborate. The Court does not view it as "circular," given that both the employer and the employee are sacrificing rights related to bringing any claims before a court of law.

No. 04-2142, 2005 WL 977062, at *2 (D. Conn. April 26, 2005) (citing *Fahim v. Cigna Invs., Inc.*, No. 98-232, 1998 WL 1967944, at *2 (D. Conn. Sept. 10, 1998)); *see also Capone v. Elec. Boat Corp.*, 06-1249, 2007 WL1520112, at *6 (D. Conn. May 18, 2007) (same).

The two cases cited by Plaintiff for the opposite conclusion are distinguishable insofar as in both of those cases, no manifestation of assent had taken place by the employee and/or no clear arbitration agreement was present.  *See Helenese*, 2010 WL 670172, at *4-5 (holding that employee's use of an online course and test to alter employment agreement to provide for arbitration insufficient and where employer made no specific promise to continue employment, this cannot constitute consideration); *Gibbs*, 1998 WL 123010, at *3-4 (finding that interoffice memorandum announcing change in policy, where employee for twenty-five years was never asked to acknowledge receipt of said change in policy, did not give rise to an enforceable arbitration agreement).  The circumstances are much different here, where there was a specified period to opt-out, all information was provided to Plaintiff, Plaintiff implicitly assented to the agreement by not opting-out in the required time period, and Plaintiff continued her employment following the expiration of the opt-out period.[5]

## B.      Scope of the Agreement

Plaintiff does not dispute that its claims fall within the scope of the Arbitration Agreement. Indeed, the Arbitration Agreement clearly covers Plaintiff's claims.  *See* Pearson Decl. Ex. C at 1

---

[5] Plaintiff cites a number of cases in Connecticut that demonstrate that continued employment is not adequate consideration for a covenant not to compete entered into after employment has commenced, *see, e.g.*, *Cost Mgmt. Incentives, Inc. v. London-Osborne*, No. 02-0463081, 2002 WL 31886860 (Conn. Super. Ct. Dec. 5, 2002).  The Court finds such cases distinguishable based on the circumstances presented here, including the fact that a mutual promise was made as well as on the authority of the decisions cited above in this District.

(covering "all claims or controversies . . . related to Associate's employment (or its termination)" including "claims for . . . retaliation or discrimination").  Moreover, the Arbitration Agreement contains a prototypical broad arbitration clause subjecting a wide array of claims to arbitration, clearly including these claims.  *See Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union Local One*, 903 F.2d 924, 927 (2d Cir. 1990) ("Where the arbitration clause is broad we have directed courts to compel arbitration whenever a party has asserted a claim, however frivolous, that on its face is governed by the contract."); *Morales v. Rent-A-Center, Inc.*, 306 F. Supp. 2d 175, 182-83 (D. Conn. 2003) (noting that a clause submitting to arbitration "all claims arising out of Plaintiff's employment and the termination of employment" is a "prototypical broad arbitration clause"  that presumptively encompasses a plaintiff's discrimination and tort claims (internal quotation marks and citation omitted)).

### C.      Procedural Unconscionability

Plaintiff argues that the Arbitration Agreement is unenforceable because it is procedurally unconscionable.  Doc. 18 at 6-7.  Defendant responds that because the parties agreed to delegate all questions of arbitrability, including unconscionability, to an arbitrator that the arbitrator must decide this particular issue.  Doc. 19 at 4-5.[6]  Alternatively, Defendant argues it is not unenforceable.  *Id.* at 5-6.

---

[6] Defendant did not make the argument regarding this delegation provision in its initial brief and does not argue that Plaintiff's argument regarding lack of consideration, addressed by the Court in Part III(A) of this Ruling, should have been submitted to the arbitrator in the first instance.  Generally, a court need not consider an argument raised first in a reply brief that should have been raised initially.  *See Evergreen Nat'l Indem. Co. v. Capstone Bldg. Corp.*, No. 07-01189, 2008 WL 926520, at *2 (D. Conn. March 31, 2008) (citing *United States v. Pepin*, 514 F.3d 193, 203 n.13 (2d Cir. 2008)).  The Court will consider Defendant's argument here, made only as it applies to unconscionability, because, regardless of any delegation to the arbitrator, Plaintiff's arguments fail.

When assessing arbitrability, "'[t]he proper inquiry is whether 'there is *clear and unmistakable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator[s].'" *Murray v. UBS Sec., LLC*, No. 12-5914, 2014 WL 285093, at *12 (S.D.N.Y. Jan. 27, 2014) (quoting *Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 125 (2d Cir. 2006)) (emphasis in original).  The Second Circuit has held that if parties explicitly incorporate rules that provide for an arbitrator to resolve the issues of arbitrability, then that incorporation is sufficient "clear and unmistakable evidence" of the intent to delegate such issues.  *Id.* (citing *Schneider v. Kingdom of Thailand*, 688 F.2d 68, 72 (2d Cir. 2012)).  The same is likely true in Connecticut which also requires clear evidence of the parties' intention to arbitrate arbitrability.  *See id.* (citing *Bell v. Cendant Corp.*, 293 F.3d 563, 567-68 (2d Cir. 2002) and *AFSCME, Council 4, Local 1303-325 v. Town of Westbrook*, 309 Conn. 767, 773 (2013)).

The Arbitration Agreement contains a provision which incorporates the "then-current JAMS Employment Arbitration Rules & Procedures," Pearson Decl. Ex. C at 2, which provide that "[j]urisditional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement . . . shall be submitted to and ruled on by the Arbitrator." *See* JAMS Employment Arbitration Rules & Procedures, Rule 11(b), *accessible at* http://www.jamsadr.com/rules-employment-arbitration (last visited January 26, 2017).  The JAMS rules, explicitly incorporated into this Arbitration Agreement, empower an arbitrator to decide the gateway issues of arbitrability.  The Second Circuit and courts in this District have recognized that an arbitration agreement providing that JAMS Rules apply may be sufficient to conclude that the arbitrator has been delegated the task of deciding all issues relating to arbitrability.  *See Emilio v.*

*Sprint Spectrum LP*, 508 F. App'x 3, 5-6 (2d Cir. 2013) (summary order); *Slidell v. Structured Settlement Invs., LP*, No. 08-00710, 2009 WL 103518, at *2-3 (D. Conn. Jan. 14, 2009).

Thus, the parties agreed to allow the arbitrator to decide issues relating to arbitrability disputes, including the current dispute over unconscionability. *See Doctor's Assocs., Inc. v. Pahwa*, No. 16-00446, 2016 WL 7635748, at *18 (D. Conn. Nov. 3, 2016) (noting that the Supreme Court has recognized that parties can agree to arbitrate gateway questions of arbitrability including whether the agreement is unconscionable), *aff'd, adopted & ratified*, 2016 WL 7410782 (D. Conn. Dec. 2, 2016). Such a conclusion is warranted in light of the fact that the incorporation demonstrates the parties' clear and unmistakable intention to arbitrate arbitrability. *See, e.g.*, *Murray*, 2014 WL 285093, at *12.

In any event, regardless of whether an arbitrator should decide this issue, Plaintiff's arguments on the merits are wholly inadequate. Plaintiff fails to allege or argue that the Arbitration Agreement is substantively unconscionable. Under Connecticut law, Plaintiff was required to show that the contract is "both procedurally *and* substantively unconscionable." *D'Antuono*, 789 F. Supp. 2d at 327 (citing *Bender v. Bender*, 292 Conn. 696, 732 (2009)) (emphasis added). Because Plaintiff makes no argument as the substantive unconscionability of the Arbitration Agreement, Plaintiff's claim that the Arbitration Agreement is unenforceable fails.

### D.    Stay or Dismissal of Action

Having concluded that all of Plaintiff's claims must be submitted to arbitration, the Court will dismiss Plaintiff's Complaint without prejudice to her right to replead when arbitration has been completed. Although the FAA directs district courts to enter stays where the asserted claims are referable to arbitration, 9 U.S.C. § 3, courts nevertheless may dismiss actions where all of the claims

asserted must be submitted to arbitration.  *See Pingel v. Gen. Elec. Co.*, No. 14-00632, 2014 WL 7334588, at *11 (D. Conn. Dec. 19, 2014) (collecting cases).

## IV.    Conclusion

For the foregoing reasons, the Court hereby grants Defendants' Motion to Dismiss the Complaint or to Stay the Proceedings and Compel Arbitration (Doc. 15).  Specifically, the Court GRANTS Defendant's Motion to Dismiss the Complaint and to Compel Arbitration and DENIES AS MOOT Defendant's alternative Motion to Stay the Proceedings and Compel Arbitration.  The clerk is directed to administratively close the case.  Parties will have the right to re-open this case if further action by the Court is necessary after arbitration.

It is SO ORDERED.

Dated: New Haven, Connecticut
         January 30, 2017


    /s/ Charles S. Haight, Jr.
**CHARLES S. HAIGHT, JR.**
**SENIOR UNITED STATES DISTRICT JUDGE**